PRINCE, Respondent, vs. OVERHOLSER, Appellant.

*January 14 — January 28, 1890.*

*Sale of chattels: Fraudulent representations.*

Defendant asked the plaintiff, who had given third parties an option to purchase a land-warrant for $500, whether such warrant would locate homestead or mineral land. Plaintiff replied that it would locate any kind of land. Defendant, after reading and examining the warrant, said if it would locate homestead land he would take it and give plaintiff $475 cash for it. Plaintiff said " all right," and defendant gave him a check for $475. The warrant showed on its face that it could not be used to locate homestead land, and was worth much less than $475. Defendant having stopped payment of the check, this action was brought to recover the purchase price. *Held*, that upon the above facts the court properly directed a verdict for the plaintiff.

APPEAL from the Circuit Court for *Ashland* County.

The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Lamoreux & Gleason*, and oral argument by *E. F. Gleason*. They contended, *inter alia*, that the plaintiff's representation as to what lands could be located under the warrant was a warranty, for the breach of which the defendant might rescind the sale. 1 Parsons, Cont. 580; *Giffert v. West*, 33 Wis. 617; *Brooks v. McDonnell*, 41 id. 139; *Neave v. Arntz*, 56 id. 174; *Passenger v. Thorburn*, 35 Barb. 17; *S. C.* 34 N. Y. 634.

For the respondent there was a brief by *Dockery & Kingston*, and oral argument by *E. J. Dockery*. They argued that the statement of the plaintiff did not constitute a warranty, being merely the expression of an opinion upon a matter of which he had no special knowledge, and as to which the defendant's means of information were equal to his own. *Upton v. Tribilcock*, 91 U. S. 50; *Tenney v. Cowles*, 67 Wis. 594; *Bishop v. Small*, 63 Me. 12; *Wolcott v. Mount*, 38 N. J. Law, 496, 499; *Reed v. Hastings*, 61 Ill. 266; *Byrne v. Jansen*, 50 Cal. 624; Benj. on Sales, sec. 613. Nor was there any deceit or fraud which would avoid the sale, the means of information being at hand and equally open to both parties, and no concealment being attempted. *Wood v. Boynton*, 64 Wis. 265, 272; *Slaughter's Adm'r v. Gerson*, 13 Wall. 385; Benj. on Sales, secs. 420, 422; *Medbury v. Watson*, 6 Met. 259, 260; *Brown v. Castles*, 11 Cush. 350; *Veasey v. Doton*, 3 Allen, 381; *Hemmer v. Cooper*, 8 id. 334; *Cooper v. Lovering*, 106 Mass. 79; *Mooney v. Miller*, 102 id. 217; *Gordon v. Parmelee*, 2 Allen, 212; *Willard v. Randall*, 65 Me. 81, 86; *Brown v. Leach*, 107 Mass. 364, 368; *Henshaw v. Robins*, 9 Met. 83, 88; *Tyre v. Causey*, 4 Harr. 425; *Hawkins v. Barry*, 10 Ill. 36; *Hazard v. Irwin*, 18 Pick. 95, 105; *Mamlock v. Fairbanks*, 46 Wis. 415; *Buffalo B. W. Co. v. Phillips*, 67 id. 129, 134.

ORTON, J.   The plaintiff owned a bounty land-warrant, No. 66,828.   A Mr. Lambert and a Mr. Hagarty offered him $500 for it, on condition that the person for whom they were purchasing it should within ten days be satisfied with it, and they went to the office of the defendant, who was a land agent, to have him receipt for it and hold it to be delivered to the purchaser on payment to him for the plaintiff of $500, or, if not so sold, to be returned to the plaintiff.   While Hagarty was drawing the receipt, according to the testimony of the defendant he asked the plaintiff if the warrant or certificate would locate homestead or mineral land, and he said that it would locate any kind of land.   The defendant then said if it would locate homestead land he would take it and give the plaintiff $475 cash for it, and the plaintiff said, " All right," and the defendant gave him his check on a bank for that amount.   The warrant was delivered to the defendant, and his check for said sum was delivered to the plaintiff.   The plaintiff testified that the defendant took the warrant in his hand, and read it, and examined it, before the sale; and his testimony was not disputed by the defendant.   Soon thereafter the defendant found out that the warrant would not locate homestead lands, and stopped payment on the check, and tendered the warrant back to the plaintiff.   The warrant was worth much less than $475, if it could not locate homestead lands.   The plaintiff sues for the said sum of $475, and the defendant defends by setting up this false and fraudulent representation.   The court directed the jury to find a verdict for the plaintiff for the $475 and interest.

The warrant contains this statement on its face: The holder "is entitled to locate one hundred and twenty acres at any land office of the United States, in one body, and in conformity to the legal subdivisions of the public lands, subject to sale at either the minimum or lower graduated prices."   This statement clearly expresses the use that can

be made of the warrant, and that is, to locate any of the *common and graduated* public lands of the United States, and as clearly shows that it cannot be used to locate homestead or any other special lands. That statement informed the defendant that the warrant could not be located on homestead lands, and that the plaintiff's representation that it could be was not true. It would seem to have been intended as specific information of its use, and of the lands upon which it could be located. L. T. Boyd, a witness on behalf of the defendant, and a receiver of a United States land office, was asked by the court: "What kind of lands can it be used in entering?" and answered: "*Just what it says on the face of it,*— lands subject to cash sale." The plaintiff had already given other parties an option to purchase the warrant for $500, and the defendant knew it, and voluntarily, and without any request by the plaintiff, offered to purchase it for $475 cash; and this was after he had taken the warrant in his hand, read it, and examined it.

When the value of the thing sold was open to the investigation of both parties, no disparity, however great, is to be received, in an action at law, as evidence of fraud. *Wood v. Boynton*, 64 Wis. 265. In *Mamlock v. Fairbanks*, 46 Wis. 415, the party had in his hands the papers which showed the residence of the person about which the misrepresentation was made, and, although he did not read them at the time, it was held that he therefore knew or might have known the truth or falsity of the statement as to such residence, and did not rely or ought not to have relied upon, and was not misled or ought not to have been misled by, such statement. Here both parties had the same information and the means of knowledge of the use that could be made of the warrant, and there was no concealment of the statement on the face of the paper which showed on what lands it could be located. If the defendant did not know or understand it, it was his own fault and

negligence. *Slaughter's Adm'r v. Gerson*, 13 Wall. 385. The fraud or mistake must have been of such a nature that the defendant could not, with reasonable diligence, acquire knowledge thereof when put on inquiry. *Trigg v. Read*, 5 Humph. 529; Kerr, Fraud & M. 407; *Hill v. Bush*, 19 Ark. 522; *Daniel v. Mitchell*, 1 Story, 172; *Brown v. Leach*, 107 Mass. 364. This case, by its few facts, is clearly and squarely brought within these authorities. The circuit court was justified by the uncontroverted facts in directing a verdict for the plaintiff. We will not inquire whether the statement of the plaintiff was not a mere opinion, and not an actionable misrepresentation, for the above principles and facts are fatal to the defendant's defense.

*By the Court.*— The judgment of the circuit court is affirmed.